OPINION OF THE COURT
Daniel H. Prior, Jr., J.
Petitioners seek to annul part of respondent Public Service Commission’s Opinion No. 81-3 dated January 19, 1981, insofar as it authorizes the allowance of deferred taxes in the recoverable revenue requirement in telephone rate setting, together with related relief. The controversy concerns an accounting procedure called normalization.
When a public utility makes a capital expenditure, the tax law allows the expenditure to be depreciated over the useful life of the item. It is generally accepted that the item’s value and usefulness declines relatively evenly over its useful life.
The use of the straight-line depreciation method allows an even tax deduction benefit. This tax benefit can be directly flowed through to the rate payer. There is a direct corollation between the tax benefit, the item’s use and the rate payer (utility user).
*669 Provisions in the Internal Revenue Code (US Code, tit 26, § 167) allow certain accelerated depreciation methods (and resulting tax benefits) to be used. As a result, there is an uneven tax benefit as compared to the straight-line method, which, if directly flowed through to the rate payer (utility user) gives the user a substantial savings during the first years of the item’s useful life. If there was no user turnover and usage changes, this could be a reasonable procedure.
In order to prorate the tax benefit of accelerated depreciation over the useful life of the item, an accounting procedure of normalization is used whereby the tax savings resulting from the use of accelerated depreciation rather than straight-line depreciation is placed into a deferred tax reserve account until needed to pay the taxes in the years where the straight-line method would have produced a greater savings. Presuming relative stability in tax rate, the reserve for any given item should be exhausted when the straight-line depreciation method has exhausted the depreciable value of the item at the end of its useful life. Thus, the utility rate to the user is based on the straight-line depreciation method and the tax liability is based upon the accelerated depreciation method. The actual differences flow into and out of the deferred tax reserve account.
A thorough but nontechnical discussion of “normalization” is contained in the Illinois Commerce Commission’s decision in Matter of Union Elec. Co. (29 PUR3d 177). (See, also, Memphis Light, Gas & Water Div. v Federal Power Comm., 500 F2d 798; New England Tel. & Tel. Co. v Public Utilities Comm., 390 A2d 8 [Me].)
Normalization has several results. The first is that the actual user (rate payer) pays for the item at a rate proportioned to its actual straight-line depreciation and his actual use of the item without the earlier user reaping a benefit to the detriment of the user who uses the item late in its useful life. The second is the creation of a substantial deferred tax reserve account.
This reserve account will continue to grow in size (generally) if the utility grows. It will stabilize generally if the utility ceases to grow and only replaces items after the *670 expiration of their useful life. The public purpose appears to be to allow the utilities to use the fund to provide interest free investment capital. As the shareholders’ profit is based on their own investment, the use of this fund for capital investment would, in theory, appear to benefit the user by providing better service without finance costs.
By allowing the utilities to defer the payment of taxes, it is the government who has forfeited the use of the funds for a definite period of time, thus providing the interest free aspect of the reserve.
Petitioners argue that “normalization” is illegal in that it is not “just and reasonable” (see Public Service Law, §§91, 97). Petitioners allege that the tax expense used for rate setting to the extent that it exceeds the actual tax paid is a fictitious expense and that the tax deferred is “indefinitely” deferred.
The “permanent tax savings” argument was rejected by the Colorado Supreme Court in Colorado Municipal League v Public Utilities Comm. of State of Col. (198 Col 217). The Colorado court summarized its findings and the arguments as follows (p 220): “The League argues * * * that accelerated depreciation results, as a matter of law, in a permanent tax savings. The League contends that the PUC erred, therefore, in permitting normalization rather than returning the tax savings to the present ratepayer through the flow-through method of accounting. This argument was implicitly rejected by the United States Supreme Court in FPC v. Memphis Light, Gas & Water Division, 411 U.S. 458, 93 S.Ct. 1723, 36 L.Ed.2d 426 (1973). We also find the argument to be without merit.” This court concludes that the use of the normalization accounting procedure does not result in a permanent tax savings as a general rule. The fact that the deferred tax reserve account has increased in size over the past year does not suggest to this court that the deferred tax is permanent tax savings. With continuing investments in equipment and plants in the face of inflation and economic growth, it would be natural to expect the net size of the account to grow as the addition of new deferred taxes outpaces the subtractions as older items reach the stage where the deferred taxes are pay *671 able. There is no factual showing that the deferred tax is “fictitious” or “deferred indefinitely”, and the law suggests otherwise.
There is no showing made in this case that the use of “normalization” as a matter of law is arbitrary, capricious, unlawful or results in unjust and unreasonable rates in violation of sections 91 and 97 of the Public Service Law. The fact that other methods may have been determined to be just and reasonable does not make this method improper. The use of accelerated depreciation with normalization appears to treat present and future rate payers fairly allowing the utility to take advantage of the resulting tax benefit to the advantage of everyone.
The “loser”, if there is one, is the government. It loses the use of the tax while it is deferred. However, the governmental policy behind the procedure, i.e., the stimulation of economic growth by encouraging capital investment, is promoted.
The court does not reach any of the specific facts concerning the use of normalization as that would involve questions of substantial evidence which petitioners specifically waived.
The constitutional questions and other issues raised by petitioners are without merit.
The petition is dismissed, with costs and disbursements assessed against petitioners.